KIERSTED *vs.* THE STATE, use of COSTELLO.
MORROW *vs.* THE STATE, use of ISRAEL.
CHAMBERLAIN *vs.* THE STATE, use of KEILER.

*December,* 1829.

Where an applicant for a discharge under the acts relating to insolvent debtors, fails to appear according to the condition of the bond taken from him, an action in the name of the State, (the obligee) for the use of a creditor, may be maintained thereon, against the applicant's security in the bond. The pleadings must disclose, that the equitable plaintiff was a creditor of the insolvent, to a certain amount; and the applicant's failure to appear. The amount of the creditor's debt, is the measure of damages; and neither the poverty of the applicant, nor the fact, that no allegations were filed against him by creditors, constitutes a defence thereto.

Obligations in which many persons are interested, may be taken in the name of the State, whenever the law is silent in naming the obligees, to whom they are to be given.

A consistent and uniform practice under various acts of Assembly, passed in relation to the same subject, so fully establishes the contemporaneous construction of the first act in the system, that after twenty years, it has too long obtained, to be shaken and disturbed.

So bonds with condition for the appearance of insolvent debtors, made to the State as obligee, are sanctioned by the uniform practice of twenty years, although the acts of Assembly, under which they are required to be executed, contain no specific provision for making them to the State, and creditors may bring suits on them, for their use, though not expressly authorised by law to sue.

KIERSTED *vs.* THE STATE, use of COSTELLO. Appeal from *Baltimore* County Court. The first of these appeals was an action of debt on a bond executed by *N. Kimball,* an applicant for the benefit of the insolvent laws, with the appellant (the defendant below) as his surety, brought at the instance and for the use of *Costello,* claiming to be a creditor of the insolvent. The defendant pleaded general performance by *Kimball,* to which the plaintiff replied, that *Kimball* was indebted to *Costello* in the sum of $31 64, and that *Kimball* did not make his personal appearance before the judges of *Baltimore* County Court, at &c. on the first Saturday of September term, 1821, then and there to answer such allegations and interrogatories, as his creditors, or any of them, might have filed against him, whereby the plaintiff sustained

damage to the amount of $64, &c.   The defendant rejoined that *Kimball* was not indebted to *Costello* in the said sum of $31·64, or any part thereof; and that no allegations or interrogatories were ever filed with the said court, to be answered by *Kimball* on the first Saturday of September, 1821, or at any other time, by the creditors of *Kimball*, or any of them.   Issue joined.

.At the trial, the plaintiff offered in evidence the bond upon which this action was brought, executed by *Nathaniel Kimball* and *Luke Kiersted*, (the defendant) to the *State of Maryland*, on the 31st of January, 1821, in the penal sum of $600, and conditioned as follows, viz.  "The condition of the above obligation is such, that if the above bound *Nathaniel Kimball* shall make his personal appearance before the Commissioners of Insolvent Debtors for the City and County of *Baltimore*, at the Court House, in the said city, on the second day of April next, at four o'clock in the afternoon, and answer such interrogatories as may be propounded to him by any of his creditors, agreeably to the act of Assembly, entitled, an act relating to Insolvent Debtors, in the City and County of *Baltimore*, and shall also make his personal appearance before the judges of *Baltimore* County Court, at the court house, in the city of *Baltimore*, on the first Saturday of September term next, then and there to answer such allegations and interrogatories as the creditors of the said *Nathaniel Kimball*, or any of them, may have filed against him, agreeably to the said act of Assembly, and the act, entitled, an act for the relief of sundry insolvent debtors, and the several supplements thereto, and continue in court, until duly discharged, then the above obligation to be void, else to be and remain in full force and virtue in law."

The plaintiff proved the execution of the said bond by the subscribing witness thereto, and then gave in evidence a warrant issued on the 15th of March, 1821, by a justice of the peace of *Baltimore* County, against the said *Kimball*, to answer unto the said *Costello* in a plea of debt, &c. upon which said warrant was thereon endorsed, the following judgment which the plaintiff also offered in evidence.

"Judgment in favour of the plaintiff, for thirty-one dollars debt, and sixty-four cents costs, with interest until paid or satisfied. *March* 20, 1821."

" The above judgment is subject to the defendant's application for the benefit of the insolvent laws, for city and county of *Baltimore.*"

The plaintiff also proved that *Kimball* did not make his personal appearance before the judges of *Baltimore* County Court, on the first Saturday in September, 1821; but did appear before the Commissioners of Insolvent Debtors. The defendant then proved that no allegations or interrogatories were filed by either the said *Costello*, or by any of the creditors of said *Kimball*, either before the Commissioners of Insolvent Debtors or *Baltimore* County Court. The defendant then prayed the court to instruct the jury, that the plaintiff was not entitled to recover. Which instructions the court [*Hanson* and *Ward, A. J.*] refused to give.

The defendant excepted. *Verdict* that *Kimball* did not well and truly observe, perform, &c. all and singular, the articles, &c. in the condition of the writing, obligatory on his part to be performed, &c. and damages assessed to the sum of $37 65. *Judgment* upon the verdict against the defendant, for $600 debt and costs, with a memorandum that the judgment was to be released on payment of the said sum of $37 65, with interest from, &c. and costs. From this judgment the defendant appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN and DORSEY, J.

*Mitchell* for the appellant contended,—1. That *Costello* had no right to bring this suit. 2. That the refusal of the court below to grant the defendant's prayer, was not authorised by law or the evidence in the bill of exceptions. 3. That the verdict was void in law. 4. That the judgment was erroneous in form and substance.

If the condition of the bond was violated, no individual creditor could bring suit on it; if he could, it must be a credi-

tor for whose debt the insolvent was imprisoned. This bond was given to the State, and no authority is given for its being put in suit for the use of an individual. Suppose there is a judgment given in this case, how are the other creditors to proceed? Can each of them bring a *scire facias* on this judgment; or must suits be brought on the bond for the use of each creditor? One judgment on the bond absorbs it. Where bonds are directed to be given to the State, a remedy is prescribed for suits being brought on them for the use of any individual who may be damnified—Such as on the bonds of sheriffs, executors, and administrators, &c. But there is no general law on the subject, as in *Pennsylvania.* 3 *Yeates,* 345. *Corporation of Washington vs. Young,* 10 *Wheat.* 406. By the act of 1805, *ch.* 110, *sec.* 11, the bond is directed to be given as a security for those creditors only, by whom the insolvent is imprisoned. 1807, *ch.* 150, *sec. 3.* 1808, *ch.* 71, *sec.* 2. 1816, *ch.* 221, *sec.* 2. 1821, *ch.* 250. *Commonwealth vs. Hatch,* 5 *Mass. Rep.* 191. The creditor must show himself to be such, and to what amount he has been damnified. Here the verdict does not find the matter in issue—How much the party was damnified. The issue is taken upon the fact, whether the insolvent was indebted, and whether any interrogatories had been filed; and the verdict is, that the insolvent did not perform, &c. A verdict is void if it does not state what damages have been sustained by the party. 5 *Com. Dig. tit. Pleader,* 524. 7 *Bac. Ab. tit. Verdict (M.)* 18, *(R.)* 37. *Hambleton vs. Veere,* 3. *Saund.* 171.

*R. Johnson,* for the appellee. The objection that *Costello* had no right to bring this action, comes too late, being after verdict. The assent to sue on the bond will be presumed to have been given. *McMechen vs. The Mayor &c. of Baltimore,* 2 *Harr. & Johns.* 41. In *Corporation of Washington vs. Young,* 10 *Wheat.* 409, the corporation refused to give permission to have the bond put in suit. The condition of the bond in question is for the benefit of all the creditors of the insolvent. Ought it to be otherwise? As to the objection to the verdict, it is now too late to object to it. The issue was found by the

jury in favour of the plaintiff, but it is incorrectly stated by the clerk. So far as the issue is as to the not filing allegations, it was an immaterial issue; for the creditors were not bound to file allegations until the insolvent appeared. 1 *Chitty's Plead.* 634. 2 *Tidd's Pr.* 813, 814. The verdict ascertains the debt. What ought to be the damages? They must be to the amount of the debt due to the creditor for whose use the action is brought. But it may be said that the bond was not forfeited, there being no allegations filed. The debtor must have appeared according to the condition of his bond, and in his plea in this suit he should have averred that fact. 5 *Bac. Ab. tit. Obligation,* (*F.*) 174. *Archbishop of Canterbury vs. Willis,* 1 *Salk.* 172.

*Mitchell* in reply. The defendant's pleading that no allegations were filed against the insolvent debtor, goes to the right of the equitable plaintiff to recover. There was no issue joined whether the insolvent debtor appeared or not. In this case, a motion in arrest of judgment would have prevailed; and if so, advantage may be taken of it on this appeal. There should have been proof that permission was given to *Costello* to sue on the bond, as the defendant's prayer to the court was a general one, that the plaintiff could not recover. Here is a judgment, and it is a bar to any other action on the same bond.

MORROW *vs.* THE STATE, use of ISRAEL.—Appeal from *Baltimore* County Court. This second appeal was also an action of debt brought on a writing obligatory entered into, to the State, on the 4th of May, 1821, by *Hugh Ireton* with *William Morrow,* (the defendant below, now appellant) as his surety, in the penalty of $500 conditioned, " that if the said *Hugh Ireton* shall make his personal appearance before the Commissioners of Insolvent Debtors for the city and county of *Baltimore,* at the Court House in the said city, on the 2d of July then next, at four o'clock in the afternoon, and answer such interrogatories as may be propounded to him by any of his creditors, agreeably to the act of Assembly, entitled, 'An act relating to insolvent debtors in the city and county of *Baltimore.*' And shall also

make his personal appearance before the Judges of. *Baltimore* County Court, at &c. on the first Saturday of September term then next, then and there to answer such allegations and interrogatories as the creditors of the said *Hugh Ireton,* or any of them may have filed against him, agreeably to the said act of Assembly, and the act, entitled, ' An act for the relief of sundry insolvent debtors,' and the several supplements thereto, and continue in court until duly discharged; then," &c.    The defendant pleaded general performance, to which, there was a replication stating that the said *Ireton,* on the 4th of May, 1821, made application to the Commissioners of Insolvent Debtors for the city and county of *Baltimore,* for a discharge under the insolvent laws of this State; that the Commissioners then ordered that the said *Ireton* should be discharged, and they did then appoint and fix the 2d of July, 1821, for the appearance of *Ireton,* before them at, &c. to answer such interrogatories as should be propounded to him by any of his creditors; and also did then appoint and fix the first·Saturday of September term then next, of *Baltimore* County Court, then to answer such allegations and interrogatories, as the creditors of the said *Ireton,* or any of them might file against him, and to continue in court until duly discharged.    That *Beale Israel,* being one of the creditors of *Ireton,* to a large amount, to wit, in the sum of $500, did file with the Commissioners of Insolvent Debtors for the city and county of *Baltimore,* before the said second of July, 1821, to wit, on the first of July, 1821, certain interrogatories to be answered by the said *Ireton.*    That the said *Ireton* never did appear before the said Commissioners on the second of July, as aforesaid, or on any other day; and also that the said *Ireton* never appeared before *Baltimore* County Court, but absented himself therefrom, to deceive and defraud his creditors.    Of all which premises the defendant, afterwards, &c. had notice.    And the said *Beale Israel,* at whose instance and for whose use this suit is instituted, was, by reason of the premises, prevented from suing and holding to bail the said *Ireton,* and hath never since been able to arrest the said *Ireton,* and hath by occasion of the premises, wholly lost his claim as aforesaid, on the said *Ireton;*

and this, &c. The defendant rejoined to the replication that the said *Ireton* did appear before the said Commissioners on the said second of July, 1821, and that he also appeared before *Baltimore* County Court, and did not absent himself therefrom to deceive and defraud his creditors. Issue joined.

1. At the trial the plaintiff gave in evidence the application of *Hugh Ireton*, for the benefit of the insolvent laws of this State, and all the papers connected therewith; and also the docket entries of the Commissioners, in his case. The report of the Commissioners of Insolvent Debtors, for the city and county of *Baltimore*, dated the 22d of September, 1821, stated the following proceedings had before them, viz. the petition of *Hugh Ireton* of the city of *Baltimore*, praying for the benefit of the insolvent laws, dated the 4th of May, 1821. A schedule of his property, real, personal and mixed, excluding the necessary wearing apparel and bedding of himself and his family, amounting (being household and kitchen furniture,) to $40. A list stating that there were no debts due to him. A list of his creditors, and among others *Beale Israel*, $41 66. The whole amount of his debts as stated, being $224 03. All of which was sworn to by the petitioner. Proof of the necessary residence of *Ireton* in the State, and that he was in custody, &c. The Commissioners then appointed and fixed the 2d of July then next, for the personal appearance of *Ireton* before them, at &c. "to answer such interrogatories as may be propounded to him by any of his creditors;" and they also appointed and fixed the first Saturday in the next September term of *Baltimore* County Court, for the final appearance of the said insolvent before the said court, "to answer such allegations as may be made against him by his creditors, or any of them, and for the final hearing of his said application." The bond entered into to the *State of Maryland*, by *Hugh Ireton* and *William Morrow*, on the 4th of May, 1821, in the penalty of $500, and conditioned for the personal appearance of *Ireton* before the Commissioners, and before *Baltimore* County Court, on the respective days before mentioned. Also the bond entered into by *Thomas Power* with *William Morrow*, as his surety, to the *State of Maryland*, on the 4th of May,

1821, in the penalty of $500, reciting that the said *Power* had been appointed by the Commissioners, provisional trustee to take possession, for the benefit of the creditors of *Ireton*, of all his property, &c. and conditioned that *Power* well and faithfully perform the said trust, &c. Also a deed of conveyance, dated the 4th of May, 1821, executed by *Ireton* to *Power*, the provisional trustee, conveying all his property, &c. The certificate of *Power*, the provisional trustee, that he had received from *Ireton* all his property, &c. Then follows the personal discharge of *Ireton*, granted to him by the Commissioners. Certain interrogatories were then stated to have been propounded to *Ireton* on the part of *Beale Israel*, to which, answers were given by *Ireton*, and sworn to by him, on the 11th of July, 1821. The Commissioners then further reported to *Baltimore* County Court, " that having diligently inquired and examined into the nature and circumstances of the said application, it appears upon such examination, that the said *Ireton* hath not complied with the terms and conditions of the said insolvent laws," &c. Whereupon it was considered and adjudged by *Baltimore* County Court, on the 22d of September, 1821, that the said *Ireton* was not entitled to the benefit of the acts of Assembly for the relief of insolvent debtors; and that, therefore, the prayer of the said petitioner ought not to be granted. The docket entries of the Commissioners on *Ireton's* petition, given in evidence as before mentioned, show that " the petition was filed on the 4th of May, 1821"—" *Thomas Power* was appointed provisional trustee"—that " the petitioner was to appear before the Commissioners, to answer interrogatories on the 2d July, 1821, and to appear before *Baltimore* County Court on the first Saturday of September term, 1821, for final discharge. His "personal discharge was filed," and "an order for publication delivered to the printer." On the "12th of May, 1821, interrogatories were filed—Answer filed." On the "2d of July, 1821, the petitioner appears—Provisional trustee continued. 22d of September, 1821, *no appearance*—No benefit." The plaintiff then proved that the said *Ireton*, at the time of his said application, was, and still is, indebted to the said *Israel*, in the

sum of $41 66. The defendant then prayed the court to direct the jury upon the foregoing evidence, that the plaintiff was not entitled to recover. Which direction the court [ARCHER, Ch. J. and *Hanson* and *Ward*, A.J.] refused to give. The defendant excepted.

2. The defendant then offered evidence to prove that the said *Ireton*, before, and at the time of his application, as set forth in the foregoing bill of exceptions, was extremely poor, and had no other property than that conveyed to his trustee, under the deed of trust aforesaid. To the admission of which evidence, the plaintiff objected. Which objection the court sustained. The defendant excepted; and the verdict being for $51, and judgment thereon rendered, for the penalty of the bond, &c. he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Williams*, (District Attorney of *United States*.) The points for the consideration of the court are—1. Whether the appearance bond of the insolvent debtor, has been legally given?

2. Whether the *cestui que use* can recover more than nominal damages, if he proves no damages? And he gave no evidence that he was damnified by the forfeiture of the bond.

3. The evidence offered by the defendant that *cestui que use* was *not* damnified, was rejected by the court below.

4. The damages should have been nominal.

1. No bond to the *State* is valid, unless given pursuant to some act of Assembly. *Owings vs. Norwood*, 2 Harr. & Johns. 108, (*note*.) The bond to be given by a trustee, under the act of 1805, *ch.* 110, *sec.* 4, is expressly required to be given to the *State*. But the bond required by the *eleventh section* to be given by the insolvent debtor for his appearance, &c. is not required to be so given—it is not said to whom the bond is to be given. By the act of November, 1788, *ch.* 17, *sec.* 5, the trustee of an insolvent debtor was required to give bond to the State. By the act of 1791, *ch.* 73, *sec.* 3, the trustee to give bond to such person as the Chancellor should direct; and the

Chancellor directed such bonds to be given to the Attorney General. The same provision is contained in the act of 1792, *ch.* 67, *sec.* 3. By the *tenth section* of that act, an imprisoned debtor, if required by the Chancellor, was to give bond: but it is not said to whom such bond was to be given. The practice seems to have been that the Chancellor directed the bond to be given to the sheriff of the county in which the debtor resided. Similar provisions are contained in the acts of 1793, *ch.* 68, *sec.* 3, 10. 1794, *ch.* 72, *sec.* 3, 10. 1795, *ch.* 82, *sec.* 3, 10. 1796, *ch.* 70, *sec.* 4, 11. By the act of 1797, *ch.* 82, *sec.* 7, the bonds of the debtors are to be given to the trustees. The act of 1797, *ch.* 97, *sec.* 4, 11, contains the same provisions as the act of 1796, *ch.* 70, *sec.* 4, 11, &c. Similar provisions are also contained in the acts of 1798, *ch.* 64, *sec.* 4, 11, and 1799, *ch.* 88, *sec.* 4, 11. By the act of 1804, *ch.* 110, *sec.* 4, trustees were required to give bonds to the *State.* By the *eleventh section* of that act, imprisoned debtors, if required by the County Court, &c. are to give bonds with security, for their appearance, &c. but it is not said to whom such bonds were to be given. The act of 1805, *ch.* 110, *sec.* 4, 11, has the same provisions. The same expressions will be found in the act of 1808, *ch.* 71, *sec.* 2. We come now to the act of 1816, *ch.* 221, *sec.* 2, whereby the Commissioners of Insolvent Debtors for the city and county of *Baltimore,* are required to take a bond for the petitioner's appearance, &c. " with security to be by them approved." From all the preceding, it will be seen that there is no provision of law which authorises the giving of a bond by a petition for the benefit of the insolvent laws, to the *State of Maryland.* The bond of a trustee of an insolvent debtor is expressly provided to be *for the use of the creditors* of the insolvent, whereas the bond to be given by the debtor is not provided to be *for such use.* No suit can be maintained on a public bond, unless the law provides that persons damnified may bring suit on any such bond. This was the argument in *M'Mechen vs. The Mayor, &c. of Baltimore,* 3 *Harr. & Johns.* 534. See the acts 1794, *ch.* 54, and 1798, *ch.* 101, *sub-ch.* 3, *sec.* 10, *sub-ch.* 12, *sec.* 5. And as analagous, he referred to 3 *Saund.* 412, 415 (*note.*) 1 *T. R.* 287.

*Kerr vs. The State, 3 Harr. & Johns. 560. Ellicott vs. The Levy Court, &c. 1 Harr. & Johns. 359.*

2. The bond being given that the insolvent debtor shall appear, &c. cannot be for the benefit of the creditors, if he does not appear. At all events, the debtor failing to appear cannot subject the surety to the payment of all the debts due to creditors. In an action on a bond with a collateral condition to secure third parties, there ought to be some evidence of damage; or else, why should the plaintiff be permitted to sue? What interest has this creditor in this bond, (his name not appearing in it,) except because he is damnified by the non-appearance of his debtor? He ought to have given some slight evidence of injury sustained by the forfeit of the bond. It would be a violent presumption, *without* evidence and against evidence, to presume that he is damnified to the whole amount of his debt. And not he only, but all the other creditors. So that the surety of an insolvent debtor is to be overwhelmed, because, to relieve his friend from imprisonment, he is his surety for his appearance. He may be, and no doubt, universally, sureties become so, because they know their principal is worth nothing or little, and, therefore, they can be very slightly injured by the forfeiture of the appearance. There is nothing in the law analogous to this doctrine. For with regard to special bail, or rather sureties in a bail bond, the presumption is, that the debtor is able to pay the debt, from which he absconds. But it is otherwise with respect to insolvent debtors.

3. But suppose the presumption not to be so in ordinary cases. In this case evidence was offered and rejected, to show actually that the principal had nothing, and, therefore, the creditor could have recovered nothing. All that could be done was to *imprison* him. This would be no satisfaction of the debt, but merely a *penalty* for fraud. Under our insolvent laws, imprisonment is no satisfaction for debts. It is used to coerce debtors to give up their property, and as a punishment for fraud. Here the proof is, that the debtor had given up all his property, *of course,* all that could be done would be to imprison him.

Vol. I.—31.

4. If there was such a privity between this creditor and the obligors in the bond, that being forfeited, he could sue on it. Still if he was not actually damnified, he was only entitled to nominal damages. By the act of 1821, *ch.* 250, provision is made for the enlargement of the time for the appearance of the debtor, without requiring a new bond, and without the consent of the creditors. What then becomes of the old bond? 5 *Johns. Rep.* 42. 9. *Johns. Rep.* 300. 10 *Johns. Rep.* 563. 2 *Johns. Rep.* 205.

*Meredith,* for the appellee.

This suit was brought in the name of the state, for the use of one of the creditors of an insolvent, against his surety, in a bond given for the appearance of the debtor, in pursuance of the act of 1816, *chap.* 221, *sec.* 2.

In the argument on the part of the appellant, it was made a question whether there could be any recovery on the bond in this case, since there is no specific provision in any part of the law referred to for taking bonds of this description in the name of the State; and it is upon this question alone that the counsel for the appellee, will detain the court. It is certainly true, that the act in question does not designate the obligee in these bonds. After providing for the appointment of the provisional trustee, the section above cited, proceeds to direct, " that the Commissioners shall take bond, with security, to be by them approved, for the appearance of such insolvent, to answer such interrogatories as may be propounded to him by any of his creditors, or such allegations as may be filed against him, within the time hereinafter mentioned." But, in the similar provision, which is to be found in the acts of 1805, *ch.* 110, *sec.* 11; 1807, *ch.* 150, *sec.* 3; 1808, *ch.* 71, *sec.* 2; and 1817, *ch.* 183, *sec.* 1, there is no more particular designation of the obligee, than in the act of 1816; and yet the invariable practice has been from the passage of the first general insolvent law in 1805, to the present period, to take the appearance bonds of insolvent debtors in the name of the State, and the legality of doing so, it is believed, has never before been questioned. A construction, therefore, thus given

by the courts throughout the State, and uniformly acted upon for upwards of twenty years, in the innumerable cases which have arisen under the insolvent law, should not be disturbed but for the strongest and most unanswerable reasons. Where the interpretation of a law is doubtful, the exposition given to it immediately after its passage, when the intention of the Legislature is more certainly ascertained than at a later period, is entitled to great consideration, and generally is deemed decisive. *Contemporanea expositio est fortissima in lege.* 6 *Bac. Ab.* 385. Again, it is a rule in the construction of statutes that such an interpretation ought to be given as will prevent the object of the law from being defeated. 15 *Johns. Rep.* 358. If the objection to the bond in this case is a valid one, it is manifest that the provision which the Legislature intended for the security of creditors is rendered wholly inoperative. For if the bond cannot be rightly taken in the name of the State, because it is not so specifically directed, it cannot for precisely the same reason be taken in the name of any other obligee. And thus creditors are left without any security whatever, and the intention of the Legislature, which is obviously to substitute the appearance bond in the place of special bail, is completely frustrated. Legislative intention is often resorted to, to explain the meaning of laws. 15 *Johns. Rep.* 358. *That* intention may be collected from other provisions in the same law, and looking to the provision with regard to the trustees bond, which is expressly directed to be taken in the name of the State by the act of 1805, it would seem that the Legislature must have intended that the appearance bond should also be given to the State, or they would have otherwise directed. Why should the one be taken in the name of the State and not the other? They are both for the security of creditors; the State, is not interested, but selected merely as a safe and permanent trustee for their benefit. Having once mentioned the form of a bond, it was not thought necessary to repeat it. And it may be remarked, that in the act of 1808, *ch.* 71, *sec.* 3, where both the trustees bond, and the appearance bond are mentioned, there is no specific direction as to either, with regard to the obligee; and

yet it will scarcely be doubted, that a trustees' bond is under this law, which is the last upon the subject, properly and legally given in the name of the State. If, however, the bond in this case is not considered as being authorised by the act of 1816, in connexion with the preceding insolvent laws, the appellee insists that it is still a good bond at common law, and that the State ought to be regarded as a trustee for the creditors, for whose benefit it was intended. This principle will be found to have been repeatedly settled in *England* and this country. The court, however, is particularly referred to. 2 *Strange,* 1137. 12 *Mass. Rep.* 367. *Addison's (Penn.) Rep.* 72, 84. That creditors may sue upon bonds of this description, notwithstanding there is no particular provision to that effect in the law under which they are given, the court is also referred to 4 *Dall. Rep.* 95. 5 *Mass. Rep.* 91, and *M'Mechen vs. The Mayor, &c. of Baltimore,* 3 *Harr. & Johns.* 534. See also 1 *Binney's Rep.* 370, as to the priority of those who first sue on official bonds, &c.

CHAMBERLAIN *vs.* THE STATE, use of KIELER. This third case was an appeal from *Frederick* County Court, and also an action of debt on a writing obligatory entered into on the 24th of June, 1818, by the defendant, (now appellant,) with *David Wagner* and *John Gilbert* as his sureties, to the State in the penalty of $1000, and conditioned for the appearance of the defendant in *Frederick* County Court on the first Monday of November then next, to answer the allegations of his creditors according to the provisions of an act of Assembly, entitled, "an act for the relief of sundry insolvent debtors, passed at November session, 1805, and the supplements thereto," and shall not depart the said court without the leave thereof. The defendant pleaded.—1. That the action ought not to be maintained, &c. because no creditor or creditors of the defendant at any time from the time of the making the said writing obligatory to the time of the commencement of this suit, made any allegation or allegations in *Frederick* County Court against the defendant, according to the provisions of the act, entitled, &c. or the supplements thereto, or any of them; and this he is ready to verify, &c. 2. That the

action ought not to be maintained for the use of *George Keiler*, because the said *Keiler* did not at any time from the making of the writing obligatory aforesaid, to the commencement of this suit, make any allegation or allegations in *Frederick* County Court against the defendant, according to the provisions of the act of Assembly, entitled, &c. or of the supplements thereto, or any of them; and this he is ready to verify, &c. 3. That the defendant did make his personal appearance in *Frederick* County Court on the first Monday of November next ensuing, the date of the said writing obligatory, to answer the allegations of his creditors, according to the provisions of the act, &c. and did not depart the said court without the leave thereof; and this he is ready to verify, &c. To the first and second pleas there were general demurrers. To the third plea, a replication that the defendant did not make his personal appearance, &c. And that *George Keiler* was a creditor of the defendant to the amount of $61 96. Issue tendered and joined. The County Court ruled good the demurrers to the first and second pleas. Verdict on the issue to the replication to the third plea for the plaintiff. Judgment on the verdict, and the defendant appealed to this court.

The cause was argued before BUCHANAN, Ch J. and EARLE, ARCHER and DORSEY, J.

*Taney* (Attorney General of *Maryland,*) and *Ross,* for the appellant.

The act for the relief of insolvent debtors, 1805, *ch.* 110, and its several supplements, have for their object, the relief of insolvent debtors who comply with the provisions of those acts. The bond required by those acts (vide the act of 1807, *ch.* 150, *sec.* 3,) manifestly shews that the condition of the bond was, to answer allegations if filed, but not to make the debtor and his securities answerable to creditors who had no allegations to make against the debtor. If the insolvent was a delinquent, and against whom the creditors thought they had a right to complain, *and did complain in the form of allegations*, then the condition of the bond was forfeited by the non-attendance of

the insolvent debtor.   As no allegations were filed in this case, it is proof that the insolvent debtor fully complied with the provisions of the insolvent laws; for it was not necessary, to enable the creditors to file allegations, that the insolvent debtor should be present. ' The condition of his bond was, to answer the allegations of his creditors, but if they have no allegations to make, or if they had, and made none, how can they derive a right for the non-performance of a condition, the breach of which was attended with no loss to them, nor invaded any of their statutory rights?   To enable the creditors to recover on the insolvent debtors' bond, they must show they filed allegations against the petitioning debtor, and that he did not personally appear to answer those allegations as the condition of his bond required him to do.

*Pigman,* for the appellee.   By the argument of the appellant's counsel, it appears that the appellant contends that he is not liable to any creditor on his insolvent bond, as no allegations were filed against him.   Now it is evident it was the intention of the act of Assembly, that the *appearance* of the insolvent should *precede* the *filing allegations.*   The allegations are pleadings and could not be filed so as to call on *Chamberlain* to join issue until he was in court.   The proper authority discharged him out of custody upon his bond to *appear to answer allegations,* evidently to come into court first, to enable the creditors to file allegations.   If the words of the act of Assembly are particularly attended to, this will appear clearly to be the proper construction; and this construction the court below gave the words of the act of Assembly.   It appears in the record that *Chamberlain* did not appear; of course, the condition of his bond was broken.

Earle, J. delivered the opinion of the court, in the three preceding cases.

We propose to give a condensed view of these cases, and to decide them together.   For although their pleadings are a little variant from each other, they have all originated in the same

kind of cause of action, and the principal questions presented by them on the argument are the same.

They are suits upon obligations given by insolvents to the State, conditioned to appear at certain times and places, to answer the interrogatories and allegations of their creditors, to be filed against them, which in each court were decided adversely to the obligors.

The first and chief question, arising out of them is a consideration whether actions can be maintained on these obligations, inasmuch as they have been taken in the name of the *State of Maryland*, and no express authority is given by law so to take them.

The act of 1805, *ch.* 110, is the first general insolvent law enacted, in this State, to which there have been many supplements; and since then various insolvent acts to suit the situation of the city and county of Baltimore, have been passed. All have been examined by the court, as well as some in favour of individuals, before and since 1805. In none of those acts is there any specific provision for taking these bonds of the insolvents in the name of the State, although by the act of 1805, and several other acts, the courts, judges and commissioners, are to take of the imprisoned debtors, at the time of their discharge, bonds conditioned for their appearance to answer the allegations of their creditors, in penalties to be prescribed, and with security to be approved of by them. Notwithstanding the manner of taking these bonds, is no where specifically directed; we are assured, upon full inquiry, that they have been invariably passed to the *State of Maryland*, for more than twenty years past, whether taken by the courts, the judges, or the Commissioners of Insolvent Debtors for the city and county of *Baltimore*. What has produced this uniformity, it is not easy to say, unless it has been brought about by implicitly following the example of the courts and judges, upon whom it first devolved to execute these acts of Assembly. As no person was designated, in whose name the bonds were to be given, it is probable the courts and judges were prompted to the course pursued by the consideration, that the law in this particular could not be

executed, without an obligee was supplied by them, and by reflecting, that for permanency and convenience, none could be selected, more suitable than the State itself, to which all official bonds were given, and other kinds of bonds, where a multiplicity of persons are concerned. And it may be, that they were conducted to this resolution, by reasoning upon the supposed intention of the Legislature, that these bonds should be taken in the name of the State, from the fourth section of the act of 1805, *ch.* 110, which directs the trustees of insolvents to give bond to the State. Whatever may have led to the practice, its consistency fully establishes the cotemporaneous construction of the first act, in this system of laws, and we think it has too long obtained, to be at this time shaken and disturbed. And we further think, that to promote the execution of similar legislative provisions, it may be well received as a settled rule for the government of our courts of justice, that obligations in which many persons are interested, be taken in the name of the *State of Maryland,* whenever the law is silent in naming the obligees to whom they are to be given.

Another question insisted on by the appellants in the argument of this cause is, whether the appellees could sue these bonds for their use, there being no provision in any of the insolvent acts, to enable them thus to sue. This point we consider settled in this court, by the cases of *McMechen vs. The Mayor and City Council of Baltimore,* use of *A. Storey,* and *McMechen vs. The Mayor and City Council of Baltimore,* use of *Hollingsworth, & Williams,* 2 *Harr. & Johns.* 41, and 3 *Harr. & Johns.* 534. They were suits on an auctioneer's bond, taken under an ordinance of the city, which did not authorise any person, in particular, to sue it. They were nevertheless sustained, and the judgment of the County Court therein, affirmed by this court.

A still further question was moved on the argument of this case, by the appellant's counsel. They contended, that if those obligations were liable to be sued by the appellees, nothing could be recovered by them but nominal damages. Upon this subject, we are of opinion, there is very little room for doubt. In directing these bonds to be taken, the Legislature must have

had in view the interest of the creditors of the insolvents, and not merely to authorise them to sue, to run the insolvents and their securities, to useless costs.    To give them additional security for their debts, by obliging the insolvents to enter into stipulations, in nature of bail bonds, was the object; and the amount of their individual demands, we should think, must be the measure of the damages to be recovered by them respectively.    These cases were partly argued upon notes, which were not filed until the close of the last term, and could not have been earlier disposed of by us.    They appear to have been properly decided in every respect, by the County Courts, and we affirm their judgments, concurring with them in the opinions expressed on the exceptions, in the two first, and on the demurrers in the last case.

**JUDGMENTS AFFIRMED.**