(Decided 14th March, 1888.)

---

THE ANNAPOLIS SAVINGS INSTITUTION *vs.* MICHAEL BANNON and others.

*Bond—Pleading—Declaration—Demurrer—Sec. 6, of Art. 49, of the Code—County Treasurer—Action on Official bond—When not Maintainable.*

.A declaration in an action on a joint and several bond, that omits to declare against one of the obligors,.and fails to allege that he is dead, or a non-resident of the county in which the suit is brought, is bad on demurrer. (*Sec.* 6, *of Art.* 49, *of the Code.*)

.An action by a corporation on the official bond of a county trèasurer .(the condition of which was, that he should account for and pay to the County Commissioners, or their order, the several sums which he should receive for said county, or be answerable for by law, at such time and in such manner as the law should direct,) to compel payment directly to the plaintiff, of a sum of money alleged to have been collected and received by the treasurer from taxes, and ordered by the county commissioners to be paid to the plaintiff, is not maintainable, as the treasurer has no authority of his own accord to pay out money received by him for taxes.

APPEAL,. as upon Writ of Error, from the Circuit Court for Ann Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, and BRYAN, J.

*James M. Monroe*, for the appellant.

Any individual or body corporate, interested in a bond given by a public officer to the State for the faithful discharge of his official duties, may institute suit thereon in the name of the State, without authority expressly given for that purpose by the State. *State, use of Mayor, &c. of Balto. vs. Norwood, et al.*, 12 *Md.*, 177, 192.

The Code expressly authorizes suit to be brought on the bond of a tax collecter. *Code, Art.* 81, *sec.* 80, *as amended by the Act of* 1874, *ch.* 483.

The Act of 1884, ch. 262, sec. 200, sub-sec. 10, provides that "the provisions of the Code of Public General Laws of Maryland, now in force, or hereafter enacted, applicable to collectors of State and County taxes, except where the same are repealed by this Act, or are inconsistent with the provisions of this Act, shall be held to apply to the treasurer of said county, who, as to his powers, rights, duties and liabilities, both civil and criminal, and those of his bond or bondsmen, shall be in all respects on a footing with State and County collectors, except as herein provided."

It will be noticed that the provision of the Act of 1884, ch. 262, sec. 196, as to the condition of the treasurer's bond, is that "he shall account for and pay over to the County Commissioners of said county, *or their order,* the several sums of money which he shall receive for said county, *or be answerable for by law,*" and this is the condition of the bond sued on in this case. By sec. 200, sub-sec. 7, of said Act, he is expressly directed to pay over "*to the order of the County Commissioners*" what he has collected, and is allowed the space of *two years* from the date of the levy to make his final settlement.

In this case it appears from the record that the levy for the year 1885, was made more than two years previous to the institution of this suit; that the appellee had collected, or had become answerable by law for, all the taxes levied

for that year, and placed in his hands for collection; that he had been directed, by the order of the County Commissioners, to pay over to the appellant the amount of their claim, and that he had refused and neglected so to do.

The appellant is unable to find anything in the Act of 1884, ch. 262, which expressly, or by necessary implication, exempts the appellee from liability to the appellant upon this state of facts.

*Michael Bannon*, for the appellees.

The refusal to pay the orders of the County Commissioners even if issued according to law, would create no liability to the appellant on the part of the treasurer.

The orders if properly issued are in the nature of a check or inland bills. And according to the rule laid down in *Moses vs. Franklin Bank*, 34 *Md.*, 579 : "The drawee owes no duty to the holder till the order is presented and accepted, and gives the holder no preference or priority in payment over holders of orders subsequently drawn, and works no assignment of the county's funds until presented and accepted by the treasurer." See *Bullard vs. Randall*, 1 *Gray*, 605.

The order neither operates as an assignment or creates any lien on the funds of the drawer. *Chapman vs. White*, 2 *Seld.*, 412.

IRVING, J., delivered the opinion of the Court.

The questions for decision in this case arise on a demurrer of the appellee to the appellant's declaration which the Circuit Court sustained.

The appellant declared against Michael Bannon, William B. Chairs, and Franklin Chairs, upon a joint bond with a collateral condition for the faithful discharge by Michael Bannon of the duties of county treasurer for Ann Arundel County. Profert is made of the bond in the *n rr.*, and the same is found to be the joint and several

bond of the parties declared against, together with one George Colton who is not mentioned in the declaration. The declaration having thus disclosed that the plaintiff had not declared against all the makers of the bond, and having failed to excuse this omission of George Colton, by alleging him to be dead or non-resident of the county, it is bad on demurrer and the Circuit Court was right for this reason, if no other existed, in so deciding. *Merrick vs. Bank of Metropolis,* 8 *Gill,* 74. Under section 6 of Art. 49 of the Code of Public General Laws if the obligors reside in different counties, they may be sued in their respective counties; but to make the *narr.* good, in such case, it must explain the non-joinder of the obligor who is not declared against.

After setting out the bond by its profert, the declaration alleges the levy, by the County Commissioners, of certain taxes which were placed in the hands of Michael Bannon as treasurer for collection, and that having been so entrusted with the collection, before this suit was brought, he did "collect and receive from the taxes so levied and assessed on the property of the said county, or become answerable by law for the sum of eleven hundred and thirteen dollars and ninety cents current money, which he was by the order of the County Commissioners to account for and pay over to the Annapolis Savings Institution at whose instance and for whose use this suit is brought." Frequent demand and non-payment, whereby loss has accrued to the plaintiff, is alleged.

In the setting out of this cause of action another technical defect should be noticed, viz., that the treasurer is disjunctively alleged to have collected the sum of money sued for, *or to have made himself* answerable therefor *by law.* It is an alternative allegation, and one of the alternatives is a simple conclusion of law without any facts from which the law would imply an obligation. Negligence may be supposed to have been implied, but it is not alleged.

Neither of these infirmities are mentioned in the specifications of error, nor is there any allusion to them in the briefs of counsel.   The complaint, in substance is, that the Court decided that the plaintiff had no cause of action against the defendants, because their bond was only suable at the instance and for the use of the county commissioners.

The appellant relies upon the authority of *State, use of Mayor and City Council of Balto. vs. Norwood, et al.*, 12 *Md.*, 193-4.   Ordinarily, as was there decided, it is no doubt true that any individual who has a direct interest in the bond of a public officer may sue him for the failure to discharge an obligation he is under to him; but under this statute it would seem very clear that this declaration was not maintainable.   The condition of the bond provides, that the treasurer "shall account for and pay to the County Commissioners or their order the several sums which he shall receive for said county, or be answerable for by law, at such time and in such manner as *the law shall direct.*" The language "pay to the County Commissioners or their order," does not include authority to pay, in money, the claim of the plaintiff which it is averred the County Commissioners have ordered him to pay; for the law does not "so direct," but in express terms requires him to deposit all the money he receives to the credit of the County Commissioners, and prohibits his paying any money except by check, which check must bear his signature and be countersigned by the clerk of the County Commissioners.   The moneys stand to the credit of the Commissioners, and he becomes simply their agent to do their bidding.   The language of sec. 200, sub-sec. 1, of the Act of 1884, chap. 462, is as follows : "All money received by the treasurer as such during his term of office shall immediately, or as soon after its receipt as possible, be deposited in such bank as the said Commissioners may designate, to the credit of such Commissioners ; and no money shall be drawn from the said bank except by a check, signed by the treasurer,

countersigned by the clerk of said board of County Commissioners, and endorsed by the person to whom it is drawn. The treasurer shall make no payment in money except by check as aforesaid, and all checks so drawn by him shall be drawn from a check book with stubs, and shall be regularly numbered and dated, and the stub of each check drawn shall correctly describe the check and the object for which it was drawn particularly ; the stubs shall be signed and countersigned in the same manner as the check drawn therefrom, and the bank book, showing the condition of the bank account aforesaid, shall be kept regularly posted. The said treasurer shall receive county scrip or certificates of indebtedness from persons owing county taxes to the amount of the county taxes for any one year levied for general county purposes, and placed in his hands, due by them respectively; provided, the said certificates are payable out of the levy of such year ; but no such certificates shall be received in payment or part payment of any State tax, county tax for school purposes, or county tax specifically levied for a particular purpose ; he shall reserve out of the money collected by him for county purposes generally, and public schools, a sufficient sum to pay the amount levied in each current year by said Commissioners for public schools, and shall pay the same over to the board of County School Commissioners of said county as follows :" then follow the periods for such payment, which does not affect this case and question.

It thus appears that the statute requires the treasurer to put the money he collects for the county to the *credit of the County Commissioners* in such bank as they may direct; and that it cannot be withdrawn or paid away except in a particular way specified in the statute. He is thus reduced to the position of a mere agent of the County Commissioners, so far as persons standing in the situation of this plaintiff are concerned. As their officer he is required to sign the checks on this fund and their clerk is to countersign them; and the stubs also are to be signed and counter-

signed the same way. So that the Commissioners themselves can only control the fund in this way; and the treasurer is expressly prohibited from paying anything in any other way. It would seem, therefore, very clear that he cannot be bound by a judgment against him personally, nor can his securities be, for a claim such as is preferred in this declaration. Where a specific sum is levied by the County Commissioners for a particular person or set of persons, the bond of tax collectors has always been regarded as answerable directly to such person for the payment thereof; *Shepard, et al. vs. The State,* 3 *Gill,* 290; but this case does not seem to fall exactly within the reason of that and kindred decisions. The levy was not made in this case as those decisions contemplate. It is not levied to the use of the plaintiff or in his name. The treasurer, as this defendant is styled by the statute, is directly answerable, by the terms of his bond, to the County Commissioners, who may not only sue him for any dereliction of duty, but may remove him therefor; but we do not see that the demand, as set out in this *narr.* is recoverable under the bond. By its terms he does, it is true, not only undertake to pay to the Commissioners, but also "to their order." Yet the law throws around the money that passes into his hands such safeguards that he has no control over it longer than necessary to get it deposited to the credit of the Commissioners in such bank as they have selected. He can only draw a check and sign the same as treasurer. When that is done, if the Commissioners declined to allow their clerk to countersign the same, as was very possible, such check would be unavailing to the appellant, for under the law he could not draw the money from the bank. In such case he would not get paid; but the treasurer would not be in fault. The law could not have imposed, or have been intended to impose on him the duty of coercing the countersigning of his check. If the *narr.* had avowed, that after getting an order from the County Commissioners for the payment of their

claim, demand had been made of the treasurer for a check signed by him, which might be countersigned by the clerk of the County Commissioners, and which would have been so countersigned so that they could have got their money, and that the treasurer had refused to give such check with his signature appended, the question would then have been presented, whether the sureties of the treasurer under their bond would be answerable in damages for such action of the treasurer, upon which we express no opinion. If the treasurer and his sureties would be answerable in such case the declaration should set out the ground of action accurately. A claimant having a just demand is certainly not without remedy for enforcing it, although it may not be in this particular way. The demurrer was properly sustained.

*Judgment affirmed.*

(Decided 14th March, 1888.)